IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS

_____

| | |
|---|---|
| ROBERT CRAWFORD, | Cause No. CV-06-014-GF-SEH-RKS |
| Plaintiff, | FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| DR. DANIEL BENNETT, D.D.S., | |
| Defendant. | |

_____

This matter is currently pending before the Court on Defendant's Second Motion for Summary Judgment (Document 63). Plaintiff was granted permission to proceed in forma pauperis in this matter on August 25, 2006. (Document 5). This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

I. STATEMENT OF THE CASE

A. Parties

Plaintiff is a state prisoner proceeding pro se. He is currently incarcerated at the NEXUS Program in Lewistown, Montana. The issues giving rise to this litigation occurred during the course of Plaintiff's incarceration at the Montana State Prison and the Cascade County Detention Facility. The remaining Defendant in this matter is Dr. Marvin Bennett, DDS, the former Dental Director for the Montana Department of Corrections.

### B. Plaintiff's Allegations

Plaintiff's Amended Complaint, filed September 27, 2006, alleges Plaintiff first complained about an infection in his jaw in April 2001 while incarcerated in the Missoula County Detention Facility. Plaintiff contends he was told he would have to wait to be sent to Montana State Prison in Deer Lodge, Montana. He alleges that once at Deer Lodge and later when he was transferred to the Cascade County Detention Center he was simply given antibiotics and put on the dental list. (Document 7, p. 3, ¶ IV(A)(1)).

Plaintiff submits Dr. Bennett delayed treatment of a life threatening infection for more than three years. He contends Dr. Bennett was solely responsible for the approval of his dental treatment. He states Dr. Bennett refused the most effective treatment advised by Dr. Robert Bronecki, DDS even though it did not cost more. (Document 7, p. 3, ¶ IV(A)(2)).

Plaintiff alleged Dr. Bennett caused him to live with an infection that made him very sick and uncomfortable for more than three years. The result was bone deterioration and irreversible loss of eleven healthy teeth. Having been treated with antibiotics so many times, Plaintiff contends he has contracted a life long fatal staph infection caused only by the overuse of antibiotics. (Document 7, p. 4, ¶ V).

He seeks replacement of his eight front teeth with implants and compensation for his pain, suffering and threatened good health from the period starting with his first kite (note) in 2001 to May 2004 when his work was done. (Document 7, pp. 4-5, ¶ VI).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the party opposing the motion, the court finds there is no genuine issue as to any material fact

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The initial burden is upon the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the non-moving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment. *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 & n.19 (1968). Instead, the burden shifts to the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(emphasis added); *see Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 479 U.S. 949 (1986).

The court's ultimate inquiry is to determine whether the "specific facts" set forth by the non-moving party, coupled with undisputed background facts, are such that a rational jury might return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

### III. STATEMENT OF UNDISPUTED FACTS

Plaintiff was first incarcerated with the Montana Department of Corrections in January 1999. He received his initial dental screening with x-rays at Montana State Prison (herein "MSP") on February 24, 1999. (Document 65-4: Hash Affidavit, ¶ 5; Document 65-2, pp. 3, 7). He was evaluated by Marvin Bennett, DDS, on April 7, 1999.[1] Dr. Bennett diagnosed Plaintiff

---

[1] At that time, Dr. Bennett served as a contract dentist for the Department of Corrections. Dr. Bennett became the Department of Corrections Dental Director on August 22, 2000 and worked in that capacity until August 18, 2006. (Document 65-5: James Affidavit, ¶ 4).

with periodontal disease and recession of his gum tissue due to bone loss around the inside of his upper teeth and lower front teeth. (Document 65-4: Hash Affidavit, ¶ 5; Document 65-2, pp. 3-5). Dr. Bennett provided Plaintiff with oral hygiene instructions and offered him a guarded prognosis of retaining his front teeth due to his advanced periodontal disease. (Document 65-4: Hash Affidavit, ¶ 6).

While Plaintiff alleges he sent a grievance regarding his dental care in April 2001, there is no documentary evidence in the record to support that contention. Moreover, Plaintiff's April 2001 complaint was made while Plaintiff was incarcerated in the Missoula County Detention Facility and not with the Montana Department of Corrections. Even assuming Plaintiff sent a grievance regarding his dental care in April 2001, there is no evidence Dr. Bennett was aware of or should have been aware of a grievance sent to officials at the Missoula County Detention Facility.

On December 19, 2001, Plaintiff returned to the Montana State Prison. (Document 65-4: Hash Affidavit, ¶ 8; Document 65-2, pp. 1-2). He received an initial screening with x-rays on January 3, 2002. During this evaluation Plaintiff advised the dental technician he had no pain. (Document 65-4: Hash Affidavit, ¶ 8; Document 65-2, p. 8). On January 19, 2002, Plaintiff submitted an Inmate Medical/Dental Request form requesting to be scheduled for a cleaning. (Document 65-4: Hash Affidavit, ¶ 9, Document 65-2, p. 9). On February 7, 2002, prior to receiving a cleaning, Plaintiff was transferred from Montana State Prison to the Cascade County Regional Prison (hereinafter, "CCRP") where he remained until October 4, 2002. (Document 65-4: Hash Affidavit, ¶ 9; Document 65-2, pp. 1-2).

The Montana Department of Corrections entered into contracts with regional prisons in Cascade County and Dawson County to house prisoners. These contracts state the regional facilities will provide routine dental care of prisoners in their custody, including extractions. These contracts also provide that the Department of Corrections will pay for certain dental treatment that require outside consultations and dental hardware. (Document 65-5: Janes Affidavit, ¶ 2). Prior to July 2007, the Department of Corrections expected inmates to actively assist in managing their dental care by notifying a receiving facility of dental treatment needs upon entry into the facility. (Document 65-4: Hash Affidavit, ¶ 46).

On May 9, 2002, after his transfer to CCRP, Plaintiff submitted an inmate Medical Request form requesting to be placed on the list to see the dentist. (Document 65-4: Hash Affidavit, ¶ 10; Document 65-2, p. 10). CCRP responded by advising Plaintiff he was on the dental list. (Document 65-4: Hash Affidavit, ¶ 10; Document 65-2, p. 10). Nothing in the record indicates whether Plaintiff received dental treatment during that time at CCRP or sent any follow-up request for treatment.

On October 4, 2002, Plaintiff was transferred back to Montana State Prison. (Document 65-4: Hash Affidavit, ¶ 11; Document 65-2, pp. 1-2). Once back at the prison, Plaintiff did not make any treatment requests until May 12, 2003 when he submitted an Inmate Medical/Dental Request form complaining of boils, apparently unrelated to his dental condition, and a possible infection in his mouth. (Document 65-4: Hash Affidavit, ¶ 11; Document 65-2, p. 11). On May 12, 2003, prison dental staff assessed Plaintiff, treated him for ulcerative gingivitis, and referred him to the dental clinic as soon as possible. (Document 65-4: Hash Affidavit, ¶ 11; Document 65-2, pp. 11-12). This treatment included recommendations for frequent brushing with a soft

toothbrush or washcloth, warm salt water rinses and rinses with hydrogen peroxide and/or mouthwash. (Document 65-2, p. 12–MSP Patient Care Protocol dated May 12, 2003).

On May 13, 2003, for reasons unrelated to Plaintiff's medical or dental treatment, Plaintiff was transferred back to CCRP. (Document 65-4: Hash Affidavit, ¶ 12; Document 65-2, pp. 1-2). On May 13, 2003, Plaintiff submitted an Offender/Staff Request form advising the staff at CCRP of his dental condition. (Document 65-4: Hash Affidavit, ¶ 12; Document 65-2, p. 13). The records indicate the medical staff at CCRP began treating Plaintiff with antibiotics and pain reliever (rx. Keflax, Motrin and Tylenol). (Document 65-4: Hash Affidavit, ¶ 12; Document 65-2, pp. 13-14).

Plaintiff sent Inmate Medical/Dental Health Request forms to the staff at CCRP requesting dental treatment on the following dates: June 1, 2003, June 17, 2003, July 17, 2003, and July 24, 2003. Each time CCRP staff responded by advising Plaintiff he was on the list to see a dentist. (Document 65-4: Hash Affidavit, ¶ 13; Document 65-2, pp. 15-18). On July 25, 2003, CCRP renewed Plaintiff's prescription for antibiotics and pain relievers (Doxycycline, Motrin and Ibuprofen). (Document 65-4: Hash Affidavit, ¶ 13; Document 65-2, pp. 18-19).

On August 21, 2003, Plaintiff submitted an informal grievance requesting dental care. (Document 65-4: Hash Affidavit, ¶ 14; Document 65-2, p. 20). Staff at CCRP denied his grievance advising Plaintiff he was scheduled to see a dentist. Plaintiff did not appeal this response to the Department of Corrections. (Document 65-4: Hash Affidavit, ¶ 14; Document 65-2, p. 20).

Plaintiff submitted another request for dental care on August 24, 2003, requesting

to see a dentist and more Ibuprofen. (Document 65-4: Hash Affidavit, ¶ 15; Document 65-2, p. 21). In response, CCRP staff renewed Plaintiff's prescription for Ibuprofen on August 24, 2003. (Document 65-4: Hash Affidavit, ¶ 15; Document 65-2, pp. 21-23). On September 12, 2003, Plaintiff was seen by Robert Bronecki, DDS for an evaluation. Plaintiff advised Dr. Bronecki that he wanted "all bad ones [teeth] extracted." Dr. Bronecki advised Plaintiff he would be scheduled for a periodontal evaluation. (Document 65-4: Hash Affidavit, ¶ 16; Document 65-2, p. 24-25: Dr. Bronecki's Treatment Records).

On September 18, 2003, Plaintiff requested an increased level of Ibuprofen, which was granted. (Document 65-4: Hash Affidavit, ¶ 17; Document 65-3, p. 1). On September 22, 2003, prior to Plaintiff's periodontal examination or teeth extractions, CCRP completed a preauthorization form requesting Dr. Bennett approve Plaintiff for upper and lower partials. (Document 65-4: Hash Affidavit, ¶ 18; Document 65-3, p. 2). While Dr. Bennett did not approve the payment for partials until June 9, 2004, it is common for Dr. Bennett to require records of the extractions prior to approving payment for partial dentures. (Document 65-4: Hash Affidavit, ¶¶ 18, 26).

On September 24, 2003, Plaintiff sent a request complaining of tooth pain and inquiring why he was not called-out to see Dr. Bronecki. CCRP staff advised Plaintiff Dr. Bronecki did not call for him. (Document 65-4: Hash Affidavit, ¶ 19; Document 65-3, p. 3). On October 17, 2003, Plaintiff saw Dr. Bronecki and received his periodontal evaluation which consisted of a deep probing of soft tissue surrounding teeth and evaluation of bone support. (Document 65-4: Hash Affidavit, ¶ 20; Document 65-2, pp. 24-25). Dr. Bronecki diagnosed Plaintiff with moderate to severe periodontal disease. Dr. Bronecki advised Plaintiff he needed a quad-scale,

extraction of multiple teeth, and periodontal re-evaluation prior to receiving a partial denture. (Document 65-4: Hash Affidavit, ¶ 20; Document 65-2, pp. 24-25).

On November 20, 2003, Plaintiff filed another grievance raising the following complaints:

> · "The first kite in my record is on 8-9-01 where I state my mouth is still infected and need dentist (sic)."
> · "I have a trail of similar kites from Missoula, Deerlodge (sic) and here."
> · "I have seen a dentist Dr. Bronecki, who after x-rays faxed an opinion to Dr. Bennett who after 9 weeks has yet to reply."
> · "I have taken antibiotics so much that I am immune to them."
> · "I had 8 teeth which needed to be worked on now I have a total of 15 removed (sic). All from a mouth with no cavities."
> · "I am suffering pain, discomfort and a definite threat of good health and have been for over 2 ½ years of my sentence."

(Document 65-4: Hash Affidavit, ¶ 21; Document 65-3, p. 4). CCRP denied the grievance and advised Plaintiff he was scheduled to see a dentist. (Document 65-4: Hash Affidavit, ¶ 21; Document 65-3, p. 4).

On December 26, 2003, Plaintiff appealed the denial of his November 20, 2003, grievance to the facility administrator. In this appeal, Plaintiff advised the facility administrator that Dr. Bronecki extracted the teeth "giving him trouble" and stated "he felt 100% better." Plaintiff's only remaining complaint was that Dr. Bennett had not approved payment for his partial dentures. (Document 65-4: Hash Affidavit, ¶ 24; Document 65-3, p. 5). The facility administrator (sheriff) denied Plaintiff's appeal stating CCRP had "done all that it can in the matter." (Document 65-4: Hash Affidavit, ¶ 24; Document 65-3, p. 5). Plaintiff contends he appealed the denial of his November 20, 2003 grievance to the Department of Corrections on

January 8, 2004. (Document 40-2, p. 1). Defendant disputes this grievance appeal was received by the Department of Corrections Contract Placement Division. (Document 61).

On December 5, 2003, Dr. Bronecki extracted Plaintiff's teeth #'s 7-10 and 23-26 (four upper and four lower front teeth.). On January 9, 2004, Plaintiff received a deep scaling of all quadrants. (Document 65-4: Hash Affidavit, ¶ 23; Document 65-2, pp. 24-25). On March 12, 2004, Dr. Bronecki extracted three (3) of Plaintiff's wisdom teeth. (Document 65-4: Hash Affidavit, ¶ 25; Document 65-2, pp. 24-25).

The following series of e-mails were sent by CCRP to Dr. Bennett and Montana Department of Corrections Managed Care Bureau regarding approval of payment for Plaintiff's partial dentures: an e-mail dated May 26, 2004, wherein CCRP inquired into the status of the denture approval; an e-mail dated May 27, 2004, indicating Dr. Bronecki was faxing additional information to Dr. Bennett; an e-mail dated June 1, 2004, stating Plaintiff's x-rays were forwarded to Dr. Bennett for his review; and an e-mail dated June 9, 2004, wherein Dr. Bennett approved Plaintiff's maxillary (upper) and mandibular (lower) partial dentures and authorized payment of $2,400 for the dentures. (Document 65-4: Hash Affidavit, ¶ 26; Document 65-3, pp. 9-14).

On June 17, 2004, Dr. Bronecki took impressions for metal frame partial dentures. Dr. Bronecki tried-in the metal frames, fit the maxillary (upper partial) frame, and took another set of impressions for the mandible (lower) frame on July 30, 2004. (Document 65-4: Hash Affidavit, ¶ 27; Document 65-2, pp. 24-25). On July 30, 2004, Plaintiff was fit for his upper and lower partial denture frames. (Document 65-4: Hash Affidavit, ¶ 28; Document 65-2, pp. 24-25). On

October 1, 2004, Dr. Bronecki delivered the completed upper and lower partials to Plaintiff. (Document 65-4:  Hash Affidavit, ¶ 28; Document 65-2, pp. 24-25).

Plaintiff was released to the Great Falls Pre-Release Center on November 4, 2004. (Document 65-4:  Hash Affidavit, ¶ 28; Document 65-2, pp. 1-2).

## IV.  ANALYSIS

To state an arguable section 1983 claim for failure to provide medical care, a prisoner must allege defendants' "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987).

Deliberate indifference under the Eighth Amendment involves the consideration of two elements:  "[1] the seriousness of the prisoner's medical need[;] and [2] the nature of the defendant's response to that need."  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled in part on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'."  *Id.* quoting *Estelle*, 429 U.S. at 104, 97 S. Ct. at 291.  Serious medical needs include:

> The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;  the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain[.]

*McGuckin*, 974 F.2d at 1059-60 *citing Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990) (citing cases) and *Hunt v. Dental Dept.*, 865 F.2d 198, 200-01 (9th Cir. 1989).

The nature of the defendant's response to the serious medical need is the second element in consideration of deliberate indifference. Since ordinary medical malpractice is not sufficient to state an Eighth Amendment claim, the defendant must have acted purposefully to "ignore or fail to respond to a prisoner's pain or possible medical need[.]" *McGuckin*, 974 F.2d at 1060. Where a prison medical staff has acted based on a, "medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Instead, a plaintiff must show the course of treatment chosen by the doctor was medically unacceptable under the circumstances, and the course was chosen "in conscious disregard of an excessive risk to plaintiff's health." *Id.* (citations omitted).

Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations & quotations omitted); *see also McGuckin*, 974 F.2d at 1060. There is no Eighth Amendment violation if any delay in treatment is not harmful. *Shapely v. Nevada Bd. of State Prison Com'rs.*, 766 F.2d 404, 407 (9th Cir. 1985). However, unnecessary continuation of pain may constitute the "harm" necessary to establish an Eighth Amendment violation from delay in providing medical care. *McGuckin*, 974 F.2d at 1062.

A dispute between a prisoner and prison officials over the necessity for or extent of medical treatment does not give rise to a claim under § 1983. *Shields v. Kunkel*, 442 F.2d 409, 410 (9th Cir. 1971); *Mayfield v. Craven*, 433 F.2d 873 (9th Cir. 1970); *McKinney v. People of State of Cal.*, 427 F.2d 160 (9th Cir. 1970); *Franklin v. State of Oregon, State Welfare Division,*

662 F.2d 1337, 1344 (9th Cir. 1981). *See also* Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (difference of medical opinions).  "Society does not expect that prisoners will have unqualified access to health care[.]" Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156, 167 (1992). Therefore, an inmate does not have the same unrestricted choice in receiving medical treatment as he would if he were not incarcerated.  "The 'routine discomfort' that results from incarceration and which is 'part of the penalty that criminal offenders pay for their offenses against society' does not constitute a 'serious' medical need." Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994) citing McGuckin, 974 F.2d at 1059.

"Dental care is one of the most important medical needs of inmates." Hunt, 865 F.2d at 200 quoting Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir. 1980) cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). "Accordingly, the eighth amendment requires that prisoners be provided with a system of ready access to adequate dental care." Hunt, 865 F.2d at 200.

Defendant raised a statute of limitation defense. In response, Plaintiff asserts tolling of 120 days under Mont. Code Ann. § 2-9-301(2) based upon Plaintiff's filing of a claim with the Montana Department of Administration. Defendant acknowledges Plaintiff filed a claim on October 19, 2005 and argues all claims prior to October 19, 2002 should be barred. (Document 80, pp. 4-5.) However, as set forth below, Plaintiff's first complaint to the Department of Corrections regarding an infection in his mouth was on May 13, 2003. Therefore, the statute of limitations bar does not come into play in the Court's analysis.

Defendant argued in his First Motion for Summary Judgment that Plaintiff's claims should be dismissed based upon Plaintiff's failure to exhaust administrative remedies. Defendant

argued Plaintiff had not filed a grievance appeal to the Director of the Montana Department of Corrections as required by the grievance policy. (Document 35). While Defendant's motion was denied without prejudice, Plaintiff's administrative grievances are still relevant to the analysis of the merits of Plaintiff's claims. Specifically, Plaintiff's claims are limited to fully exhausted issues. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 925-26, 166 L.Ed.2d 798 (2007)(if a Complaint contains both exhausted and unexhausted claims, the proper remedy is to dismiss the unexhausted claim or claims and proceed on any exhausted claims).[2] The only grievance which even disputably was fully exhausted is Plaintiff's November 20, 2003 grievance. That grievance raised the following complaints:

> · "The first kite in my record is on 8-9-01 where I state my mouth is still infected and need dentist (sic)."
> · "I have a trail of similar kites from Missoula, Deerlodge (sic) and here."
> · "I have seen a dentist Dr. Bronecki, who after x-rays faxed an opinion to Dr. Bennett who after 9 weeks has yet to reply."
> · "I have taken antibiotics so much that I am immune to them."
> · "I had 8 teeth which needed to be worked on now I have a total of 15 removed (sic). All from a mouth with no cavities."
> · "I am suffering pain, discomfort and a definite threat of good health and have been for over 2 ½ years of my sentence."

(Document 65-4: Hash Affidavit, ¶ 21; Document 65-3, p. 4). Therefore, the Court will limit its analysis to the issues raised in Plaintiff's November 20, 2003 grievance.

---

[2]Plaintiff argues for the first time in his response to the Motion for Summary Judgment that Dr. Bennett is liable for an unconstitutional custom, policy or practice of requiring inmates to start over on the dental priority list every time they were transferred to a different facility. This issue was not presented in Plaintiff's Amended Complaint and it was not raised in Plaintiff's November 20, 2003 grievance. As it would be prejudicial to allow this claim to be raised at this late stage in the litigation, it will not be addressed.

Defendant has provided the following responses to Plaintiff's grievance. First, Defendant notes that Plaintiff claims he first stated his mouth was infected on August 9, 2001 but he was not in the custody of the Montana Department of Corrections on August 9, 2001. Although Plaintiff was incarcerated at Montana State Prison in 1999, he was transferred to a pre-release center on December 10, 1999. Plaintiff was not returned to the prison until December 19, 2001. (Document 65-4: Hash Affidavit, ¶ 4; Document 65-2, p. 2).

Once back at Montana State Prison, Plaintiff received a dental screening and x-rays on January 2, 2002. At that screening, Plaintiff did not complain of an infection and told the dental technician he had no pain. (Document 65-4: Hash Affidavit, ¶ 22; Document 65-2, p. 8). The first evidence in the Court's record of Plaintiff having made a complaint regarding an infection is his May 12, 2003 dental request stating his "mouth seems to be infected." (Document 65-2, p. 11). Plaintiff was assessed on May 12, 2003 and referred to the dental clinic "ASAP." (Document 65-2, p. 12). Unfortunately, Plaintiff was transferred to the Cascade County Detention Facility the next day and had to start all over with new dental requests. The undisputed testimony is the transfer was for reasons unrelated to Plaintiff's dental treatment. (Document 65-4: Hash Affidavit, ¶ 12).

Once Plaintiff was transferred to the regional prison, it was that facility's responsibility to conduct "routine dental care." (Document 65-5: Janes Affidavit, ¶ 2). Although Plaintiff did not see a dentist until September 12, 2003, he did receive pain medications and antibiotics during that period. Moreover, there is no evidence Dr. Bennett was aware of this delay or was responsible for Plaintiff's dental treatment while Plaintiff was in the custody of Cascade County.

Plaintiff's next complaint involves Dr. Bennett's alleged failure to approve Dr. Bronecki's "opinion." The Court has construed this as a complaint regarding the delay in processing the request to pay for Plaintiff's partials. A preauthorization form was sent from the Cascade County Detention Center to Dr. Bennett on September 22, 2003, just ten days after Plaintiff's appointment with Dr. Bronecki. (Document 65-3, p. 2). E-mail inquiries were sent regarding this request on May 26, 2004, May 27, 2004, and June 1, 2004. (Document 65-3, pp. 9-11). Dr. Bennett approved Plaintiff for both maxillary and mandibular partial dentures on June 9, 2004. (Document 65-3, p. 12). Dr. Bronecki delivered the partials to Plaintiff on October 1, 2004. According to Dr. Bronecki's treatment records, Plaintiff needed a quad-scale, extractions and periodontal re-evaluation prior to receiving partial dentures. (Document 65-2, p. 24–Dr. Bronecki's treatment note from October 17, 2003). Therefore, even though Dr. Bennett did not authorize payment of Plaintiff's partial dentures until June 9, 2004, it did not delay Dr. Bronecki performing the extractions of Plaintiff's teeth. (Document 65-4, ¶ 22). Defendant also points out that Plaintiff admitted in one of his request forms that Dr. Bronecki had to extract his wisdom teeth "before impressions can be done." (Document 65-3, p. 6: March 8, 2004 inmate request form).

Although all the extractions were completed in March 2004 and Plaintiff did not receive his partials until October 2004, Daniel W. Hash, DMD testified that a delay between a patient's extraction and fitting partial dentures is often recommended to allow healing of soft tissue and bone which can take up to six months or longer. (Document 65-4, ¶ 22). Other than his own lay opinion, Plaintiff has not submitted any admissible evidence that Dr. Bennett's course of treatment caused Plaintiff any injury or was medically unacceptable. Plaintiff has not shown Dr.

Bennett was deliberately indifferent to Plaintiff's dental needs with regard to his delay in approving the request for partial dentures.

Plaintiff's next complaint asserts that an extended regimen of antibiotics left him "immune to them." Defendant argues there is no evidence Dr. Bennett had any knowledge Plaintiff had undergone a long term regimen of antibiotics. (Document 65-4: Hash Affidavit, ¶ 22). Further, there is no medical evidence that Plaintiff is immune to antibiotics. (Document 65-4: Hash Affidavit, ¶ 22). Again, other than his own testimony, Plaintiff has not submitted any admissible evidence that this course of treatment was medically unacceptable.

Plaintiff also alleged the dental treatment providers were responsible for his tooth loss. Defendant argues there is no medical evidence to support Plaintiff's claim that the dental treatment provided by Dr. Bennett or any other treatment provider caused the need for extraction of Plaintiff's upper and lower front teeth or his wisdom teeth. (Document 65-4: Hash Affidavit, ¶ 22). Rather, the records indicate Plaintiff suffered from periodontal disease when he arrived at Montana State Prison in 1999. (Document 65-4: Hash Affidavit, ¶ 22; Document 65-2, p. 3). At that time, the prognosis for Plaintiff retaining his upper and lower front teeth was guarded. (Document 65-4: Hash Affidavit, ¶ 22; Document 65-2, p. 3). As with Plaintiff's other claims, Plaintiff failed to submit any evidence (other than his own opinions) that Dr. Bennett's treatment or lack thereof caused his tooth decay.

Finally, with regard to Plaintiff's complaint that he suffered dental pain for 2 ½ years prior to filing the November 20, 2003, grievance, Defendant argues the records do not substantiate Plaintiff's claim. (Document 65-4: Hash Affidavit, ¶ 22). As set forth above, Plaintiff first complained of an infection in his mouth on May 12, 2003 and he did not see a

dentist until September 12, 2003. During this time, Plaintiff was receiving antibiotics and pain medications and was in the custody of the Cascade County Detention Facility. There is no evidence Dr. Bennett caused the delay or had any knowledge of the delay as the contract facility was responsible for Plaintiff's dental care during that time.

In order to defeat summary judgment, Plaintiff must demonstrate that Dr. Bennett, acted purposefully to "ignore or fail to respond to a prisoner's pain or possible medical need[.]" *McGuckin*, 974 F.2d at 1060. Plaintiff failed to do so. There is no evidence before the Court to support Plaintiff's contention that Dr. Bennett knew of Plaintiff's condition while he was incarcerated at the Cascade County Detention Facility. Under the undisputed facts presented, Dr. Bennett was not made aware of Plaintiff's dental condition until September 22, 2003 when the Cascade County Detention Facility sent a preauthorization request for partials. (Document 65-3, p. 2). At that point, Plaintiff was receiving dental care from Dr. Bronecki. Although there was a delay in the approval of Plaintiff's partials, it did not delay the extractions of Plaintiff's teeth in preparation for the partials and according to Defendant's expert, it was within the standard of care. There is no evidence Dr. Bennett was deliberately indifferent to Plaintiff's serious dental needs.

Accordingly, the Court issues the following:

### RECOMMENDATION

1. Defendant's Second Motion for Summary Judgment (Document 63) should be **GRANTED**.

2. The Court should certify pursuant to Rule 24(3)(1) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. Plaintiff was

provided warnings regarding his obligations under Rule 56 of the Federal Rules of Civil Procedure and yet failed to establish a genuine issue of material fact with regard to his claim. No reasonable person could suppose an appeal would have merit.

3. The Court should direct the Clerk of Court to enter Judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure in favor of Defendants and close this matter.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendation within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."

A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**PLAINTIFF IS CAUTIONED TO KEEP THE COURT ADVISED OF ANY CHANGE OF ADDRESS. A FAILURE TO DO SO COULD RESULT IN THE DISMISSAL OF THIS CASE WITHOUT FURTHER NOTICE TO PLAINTIFF.**

DATED this 2nd day of December, 2008.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge